IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARYANN DOWNEY,** | : | CIVIL ACTION NO. 1:14-CV-1297 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **ROAD AND RAIL SERVICES, INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

This is an employment discrimination action brought by plaintiff Maryann Downey ("Downey") against her former employer, defendant Road and Rail Services, Inc. ("Road and Rail"). Downey contends that Road and Rail discriminated against her on the basis of gender, fostered a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. §§ 951–963. Presently before the court is a partial motion (Doc. 10) to dismiss, wherein Road and Rail seeks dismissal of Downey's gender discrimination and hostile work environment claims. Additionally before the court is Downey's motion (Doc. 21) for leave to file an amended complaint. For the reasons that follow, the court will dismiss the gender discrimination claim and grant Downey leave to amend the hostile work environment claim.

I.   **<u>Factual Background & Procedural History</u>**[1]

Road and Rail is a corporation with operations in Harrisburg, Pennsylvania. (Doc. 1 ¶ 6).  From October 2010 through May 2013, Downey was employed by Road and Rail as a gate clerk.  (Id. ¶¶ 8, 22).  Downey asserts that during "February 2012 and May 18, 2012 [sic], . . . a male employee sexually harassed [her] and sent [her] approximately . . . 200 inappropriate messages, . . . [some of which were] sexually inappropriate."  (Id. ¶ 9).  On May 18, 2012, Downey complained to her supervisor about "her treatment."  (Id. ¶ 10).  Her supervisor subsequently reported her complaint to the terminal manager, who purportedly took no action to investigate or address Downey's claims.  (Id. ¶ 11).

On May 19, 2012, the terminal manager issued a written disciplinary warning to Downey, which she alleges was "unfounded."  (Id. ¶ 12).  Shortly thereafter, on May 23, 2012, the terminal manager rescinded one of Downey's pre-approved vacation days and required her to undergo a random drug test.  (Id. ¶¶ 13-14). Downey avers that the terminal manager further targeted her by ordering a second random drug test on June 6, 2012 and by issuing a second written disciplinary warning on July 11, 2012.  (Id. ¶ 15).  Downey contends that the second disciplinary warning, like the first, was unfounded.  (Id.)  In the complaint, she argues that the terminal manager undertook these acts in retaliation for her May 18, 2012 report of co-worker harassment.  (Id. ¶¶ 12-15).

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true and view them in the light most favorable" to Downey.  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).

On or about July 13, 2012, Downey informed Road and Rail's President that she planned to file a union grievance regarding the "retaliatory warnings and drug tests" and asked the President to notify her union steward accordingly. (Id. ¶ 16). When the President failed to do so, Downey contacted the union steward directly. (Id. ¶¶ 17-18). They spoke on July 22, 2012, and the union steward agreed to send Downey the necessary paperwork to file a grievance. (Id. ¶¶ 18-19). Downey never received the paperwork. (Id.) On or about August 21, 2012, the terminal manager required Downey to undergo a third random drug test. (Id. ¶ 20).

On August 28, 2012, Downey dual-filed a charge of discrimination against Road and Rail with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII and the PHRA. (Doc. 11). Therein, she charged Road and Rail with two counts of retaliation, based upon (1) written disciplinary warnings and (2) random drug tests. (Id. at 11-13). In support of these averments, she stated the following:

> I opposed a practice made unlawful by the PHRA in the following manner and on the following date: During the period of February 2012 up to May 18, 2012, I was sent approximately (200) text messages from a co-worker, Mr. Charles Cye. . . . The majority of these text messages were sexual in nature, in that Mr. Cye either asked me to go out with him, or to have sex with him. . . . I sent numerous text messages to Mr. Cye asking him to stop, but he never did. . . . On or about May 18, 2012, I complained to Mr. Shawn Witmer/Supervisor, both verbally and in writing, about the offensive sexual text messages that I had been receiving from Mr. Cye. . . . At the end of May 2012, after I reported him, Mr. Cye told my co-workers that I asked him to kill my boyfriend, which was not true. . . . Also at the end of May 2012, for about two weeks, when he drove by my gatehouse, Mr. Cye stopped for about (30) seconds, stared at me, and then drove on.

(Id. at 11-12). Downey next described the terminal manager's purportedly retaliatory responses to her complaint: specifically, the two written disciplinary warnings, the rescinded vacation day, and the three random drug tests. (Id. at 12-13). In closing, she noted the following:

> While [Road and Rail] does employ a policy prohibiting sexual harassment, [Road and Rail] does not provide any training regarding this policy. . . . I believe [Road and Rail's] actions were retaliatory because prior to my complaining about Mr. Cye, I was never issued any disciplinary warnings. . . . [and] I had never been asked to submit to any random drug tests, nor had any approved vacation days rescinded.

(Id.)

Upon receipt of a right-to-sue letter from the EEOC, Downey filed this action in the Eastern District of Pennsylvania on May 16, 2014, asserting claims of gender discrimination, hostile work environment, and retaliation pursuant to Title VII and the PHRA. (See Doc. 1). On July 2, 2014, the Eastern District of Pennsylvania entered an order (Doc. 7) granting Road and Rail's unopposed motion to transfer venue to the Middle District of Pennsylvania. On March 4, 2014, Road and Rail filed the instant partial motion (Doc. 10) to dismiss Downey's claims for gender discrimination (Counts I, IV) and hostile work environment (Counts II, V) pursuant to Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6). In response, Downey opposed the motion and moved (Doc. 21) for leave to file an amended complaint. Both motions (Docs. 12, 21) are ripe for disposition.

**II.     Standard of Review**

   **A.     Motion to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted.  See FED. R. CIV. P. 12.  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  A motion under Rule 12(b)(6) is the appropriate procedure by which to contest a party's timely exhaustion of administrative remedies.  Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997); see also Wilson v. MVM, Inc., 475 F.3d 166, 174-175 (3d Cir. 2007) (finding that timely exhaustion of Title VII administrative remedies is prudential rather than jurisdictional).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Iqbal, 556 U.S. at 675). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B. Motion for Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course, either within twenty-one days of service of process or within twenty-one days of a defendant's Rule 12 motion or responsive

pleading. FED. R. CIV. P. 15(a)(1). Otherwise, a party may amend "only with the opposing party's written consent or the court's leave" FED. R. CIV. P. 15(a)(2). The rules direct the court to "freely give leave when justice so requires." Id. Under this liberal standard, courts will grant leave to amend unless the opposing party can establish undue delay, bad faith on the part of the movant, futility of amendment, or prejudice to the non-moving party. See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Combined Ins. Co. of Am. v. Bastian, No. 09-CV-111, 2009 WL 5111794, at *1 (M.D. Pa. Dec. 17, 2009). "Amendment [is] futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)).

## III. Discussion

Road and Rail seeks dismissal of Downey's gender discrimination and hostile work environment claims under Rule 12(b)(6).[2] Road and Rail first avers that Downey failed to exhaust her administrative remedies with respect to these claims prior to filing the instant suit. Road and Rail further asserts that Downey's factual

---

[2] Downey asserts each claim pursuant to Title VII and the PHRA. The United States Court of Appeals for the Third Circuit has held that such dual claims are properly analyzed under the same legal standard because "Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002); see also Syed v. YWCA of Hanover, 906 F. Supp. 2d 345, 354 (M.D. Pa. 2012) ("The PHRA is construed consistently with interpretations of Title VII."). Accordingly, the foregoing discussion of Downey's gender discrimination claim applies coextensively to Count I (Title VII) and Count IV (PHRA) of the complaint, and, correspondingly, consideration of Downey's hostile work environment claim applies equally to Count II (Title VII) and Count V (PHRA). (See Doc. 1).

averments in support of these claims, even accepted as true, are insufficient to establish her entitlement to relief. In reply, Downey contends that she has satisfied her administrative exhaustion requirements and requests leave to file an amended complaint to cure the pleading deficiencies identified by Road and Rail. The court will address the gender discrimination and hostile work environment claims *seriatim*.

### A. Gender Discrimination Claim

Road and Rail argues that Downey's gender discrimination claim is subject to dismissal under Rule 12(b)(6) because it exceeds the scope of her previously filed administrative complaint. (See Doc. 12 at 6-8). Specifically, Road and Rail asserts that "[t]here is no mention of gender discrimination in [Downey's] PHRC Complaint, nor is there any allegation . . . that actions were taken against her because of her gender." (Id. at 6). Downey responds that because "a reasonable investigation by the PHRC or EEOC would have revealed [her] discrimination claim[]," she has properly exhausted her administrative remedies with respect to these allegations. (Doc. 21 ¶ 25).

Under Title VII, a plaintiff seeking redress for alleged discrimination must exhaust all administrative remedies before he or she will be granted access to federal judicial relief. Watson v. Eastman Kodak Co., 235 F.3d 852, 854 (3d Cir. 2000). This well-established prerequisite to filing suit in federal court mandates that the acts alleged in the subsequent Title VII action must be "fairly within the scope of the prior [administrative] complaint, or the investigation arising therefrom." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013)

(quoting Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)).  When a plaintiff advances claims which were not expressly raised in the initial administrative complaint, courts must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second [administrative] complaint need not have been filed."  Robinson, 107 F.3d at 1024; see, e.g., Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999) (finding plaintiff's use of the phrase "abusive atmosphere" sufficient to notify the EEOC of a potential hostile work environment claim).  Averments are deemed administratively exhausted if "the investigation potentially resulting from the [initially filed] charge . . . could reasonably be expected to have included the omitted claims."  Knaub v. Tulli, 788 F. Supp. 2d 349, 359 (M.D. Pa. 2011) (citing Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978)).  There must be a "close nexus" between the facts alleged in the administrative complaint and any newly raised claims.  Hicks, 572 F.2d at 967; see also Phillips v. Omnicare Pharm., No. 10CV0002, 2010 WL 1628784, at *2 (W.D. Pa. Apr. 21, 2010); Nerosa v. Storecast Merch. Corp., No. 02-440, 2002 WL 1998181, at *3 (E.D. Pa. Aug. 28, 2002).

In the matter *sub judice*, Downey's administrative complaint charged Road and Rail exclusively with retaliation.  (Doc. 11 at 11-13).  Specifically, Downey asserted that the terminal manager subjected her to undeserved written disciplinary warnings and random drug tests in retaliation for complaining of co-worker sexual harassment.  (Id.)  She provided details as to the nature and extent of the alleged harassment, describing approximately 200 unsolicited text messages and at least one incident wherein a co-worker attempted to threaten or

9

intimidate her.  (Id. at 11-12).  Additionally, Downey noted that although Road and Rail prohibits sexual harassment in the workplace, it does not train its employees regarding its harassment policy.  (Id. at 12).

In sum, the administrative charge depicted retaliatory action taken in response to an employee's hostile work environment complaint.  Downey neither stated nor implied a cause of action stemming from differential treatment based upon gender.  To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must demonstrate that: "(1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) [either] members of the opposite sex were treated more favorably. . . . [or the] adverse employment action occurred under circumstances that could give rise to an inference of intentional [gender] discrimination."  Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (internal quotation marks omitted).  Notably, the elements of a retaliation claim are entirely distinct.  To prevail on such a claim, a plaintiff must prove that: (1) he or she engaged in a protected employment activity; (2) his or her employer took an adverse employment action after or contemporaneous with the protected activity; and (3) the adverse action and the protected activity were causally linked.  Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007).

The court concludes that "the investigation potentially resulting from [Downey's initially filed] charge . . . could [not] reasonably be expected to have included" a claim for gender discrimination.  Knaub, 788 F. Supp. 2d at 359 (citing Hicks, 572 F.2d at 966).  Neither Downey's formal charges of retaliation nor the

factual averments therein implicated the considerations attendant to such a claim. See Vera v. Pa. Higher Educ. Assistance Agency, No. 1:12-CV-2525, 2013 WL 954046, at *4 (M.D. Pa. Mar. 12, 2013) ("Because [plaintiff's] EEOC charge discusses only retaliation, claims for disparate impact and disparate treatment . . . fall outside the scope of his administrative filing."); Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 499-500 (W.D. Pa. 2007) (holding that plaintiff's administrative complaint of retaliation, which included sufficient facts to notify the EEOC of a potential hostile work environment claim, did not support a subsequently filed gender discrimination claim); cf. Mandel, 706 F. 3d at 164 (holding that plaintiff who "failed to allege any retaliatory conduct" in an administrative complaint could not advance a retaliation claim in federal court despite "substantial [factual] overlap" between the claims). See generally Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63 (2006) ("The substantive provision [of Title VII] seeks to prevent injury to individuals based on who they are, i.e., their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct."). It follows that an administrative investigation undertaken to determine whether Downey was subject to co-worker harassment and to retaliation for engaging in protected activity would not encompass an inquiry into whether Downey was treated differently than her male counterparts with respect to disciplinary citations, leave approval, and random drug testing.

Hence, Downey's gender discrimination claim will be dismissed for failure to exhaust administrative remedies. See Mandel, 706 F.3d at 164; Watson, 235 F.3d at

854. Leave to amend will be denied as futile. See Budhun, 765 F.3d at 259 (citing Travelers, 594 F.3d at 243).

### B. Hostile Work Environment Claim

Road and Rail similarly seeks dismissal of Downey's hostile work environment claim under Rule 12(b)(6), asserting that "[t]here is no mention of hostile work environment in [Downey's] PHRC Complaint nor is there an allegation of any type of severe or pervasive conduct that altered the conditions of [Downey's] employment with Road [and] Rail." (Doc. 12 at 8). In response, Downey argues that her administrative complaint expressly referenced sexual harassment twice and that "a reasonable investigation from the PHRC into the facts" of her complaint would have revealed a hostile work environment claim. (Doc. 21 ¶¶ 27-28). On this claim, the court agrees with Downey.

To prevail on a hostile work environment claim, a plaintiff must prove that: (1) he or she suffered intentional discrimination as a result of belonging to a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him or her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in the plaintiff's position; and (5) *respondeat superior* liability existed. Andreoli, 482 F.3d at 643; Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001). In determining whether a plaintiff has established a valid hostile work environment claim, a court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002); see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).

In the instant case, Downey's administrative complaint directly implicated the aforementioned considerations; of particular relevance were Downey's averments regarding (1) her co-worker's aggressive and intimidating acts—wherein she expressly used the term "harassment"—and (2) the terminal manager's retaliatory responses to her internal complaint. Although Downey did not initially charge Road and Rail with fostering a hostile work environment, the extent and specificity of her factual averments put the EEOC and the PHRC on notice of the potential for such a claim to develop. See Miller v. Patterson Motors, Inc., No. CIV.A.3:2007-33, 2009 WL 789897, at *12 (W.D. Pa. Mar. 24, 2009) ("Plaintiff's [present] claim that Defendant is liable for sexual harassment by Plaintiff's co-worker . . . is fairly within the scope of her PHRC [retaliation] complaint, insofar as said complaint specifically references the harassment."); Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 379, 385 (E.D. Pa. 2001) ("In her narrative, the plaintiff clearly gave sufficient details such that sexual harassment, in addition to retaliation for reporting it, may be said to have been within the scope of the complaints presented to . . . both administrative agencies."); cf. Visnikar v. Dep't of Envtl. Prot., No. CIV.A.02-963, 2004 WL 438688, at *6 (W.D. Pa. Jan. 27, 2004) ("The EEOC charge does not identify a single remark or any other sexually harassing conduct towards the Plaintiff that would have put either the EEOC or the Defendants on notice that this type of claim served as the basis of her action."), adopted by No. CIV.A.02-963, ECF No. 32 (W.D. Pa. Mar. 8, 2004). The court thus concludes that

Downey properly exhausted her administrative remedies with respect to her hostile work environment claim.  See Watson, 235 F.3d at 854; Antol, 82 F.3d at 1295.

Road and Rail further contends that Downey has pled insufficient facts to establish the elements of her hostile work environment claim.  (See Doc. 12 at 18).  Downey responds by seeking leave to amend her complaint to "add more details" in support of this claim.  (Doc. 21 ¶ 30).  When a complaint fails for a lack of factual specificity, courts generally grant leave to amend before dismissal, unless amendment would be futile.  See Foman, 371 U.S. at 182; e.g., Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Road and Rail does not argue that Downey's proposed amendments would be futile.  See Budhun, 765 F.3d at 259 ("Amendment [is] futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." (citing Travelers, 594 F.3d at 243)).  Therefore, the court will grant Downey's motion for leave to file an amended complaint as to the hostile work environment claim, and it will deny Road and Rail's motion to dismiss the claim as moot.  See Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of the lawsuit.").

**IV.**     **Conclusion**

For all of the foregoing reasons, Road and Rail's partial motion (Doc. 10) to dismiss and Downey's motion (Doc. 21) for leave to file an amended complaint will be granted in part and denied in part.  An appropriate order will issue.


        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     February 2, 2015